| Minute Order Form (06/97) | | | | |
|---|---|---|---|---|
| | United States District Court, Northern District of Illinois | | | |
| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | | |
| CASE NUMBER | 03 C 2095 | DATE | 9/14/2004 | |
| CASE TITLE | Sokol and Company vs. Atlantic Mutual Insurance Company | | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, plaintiff's motion for summary judgment [27-1] is denied and defendant's motion for summary judgment [13-1] is granted. Judgment entered in favor of defendant and against plaintiff. Case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | SEP 15 2004 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 9/14/2004 date mailed notice | |
| MD | courtroom deputy's initials | 2004 SEP 14 PM 3:11 Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOKOL AND COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 03 C 2095 |
| ATLANTIC MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
SEP 15 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sokol and Company ("Sokol"), filed this action in the Circuit Court of Cook County, Illinois, Law Division, Case No. 03 L 002240, seeking a judgment against defendant, Atlantic Mutual Insurance Company ("Atlantic Mutual"), for expenses it incurred as a result of its delivery of inedible peanut butter paste to its customer. After complying with Local Rule 81.2, Atlantic Mutual removed the case to this court on diversity of citizenship grounds on March 24, 2003. Before the court are the parties' cross motions for summary judgment. Sokol is an Illinois corporation. Atlantic Mutual is a New York corporation with its principal place of business in New York. The amount in controversy exceeds $75,000. The court, therefore, has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a)(1). For the reasons set forth below, Sokol's motion is denied while Atlantic Mutual's motion is granted.

## BACKGROUND[1]

Sokol is a food products manufacturer that supplied peanut butter paste to Continental Mills for inclusion in cookie mix packages. After distributing cookie mix packages containing Sokol's peanut butter paste to its customers, Continental Mills discovered that the peanut butter paste was not fit for human consumption. Sokol confirmed that the peanut butter paste had become unfit for human consumption and agreed that the cookie mix packages containing its peanut butter paste had to be retrieved. The cookie mix packages were retrieved and unsealed in order to remove the peanut butter paste and other ingredients. Packets of peanut butter paste from a different supplier were then included in new cookie mix packages along with the other ingredients and distributed to Continental Mills' customers. Continental Mills subsequently sought reimbursement from Sokol totaling $75,441.20 for its expenses associated with the loss and damage caused by Sokol's peanut butter paste.

In December of 2001, Sokol's insurance broker provided notice of Continental Mills' claim against Sokol to Atlantic Mutual, Sokol's insurer. Sokol maintained general liability coverage and product recall expense coverage with Atlantic Mutual. Atlantic Mutual responded by letter on April 5, 2002, denying coverage based on the policy's exclusions for damage to "your product" and for damage to "impaired property." (Pl. App. II, P.8). The claim denial letter reserved the right to rely on other policy provisions and reasons to disclaim coverage. The letter also noted that "[t]he position stated in this letter shall not constitute a waiver of rights or obligations under the policy, nor is our investigation of this matter or the coverage determination made to be considered an admission

---

[1]References to Sokol's and Atlantic Mutual's fact statements, briefs, appendices and exhibits will proceed with "Pl." and "Def.," respectively.

of any obligation under policy number 763 00 62 01." (Pl. App. II, P.11). Recognizing that allegations, claims, and theories are subject to change, the letter requested that Sokol forward a copy of any suit papers to Atlantic Mutual's office for its consideration if the matter escalated into a lawsuit. (Pl. App. II, P. 12). In a subsequent letter to Atlantic Mutual, Sokol's insurance broker challenged the denial letter. Atlantic Mutual again denied coverage for Sokol's claim in a letter dated June 10, 2002. Sokol paid Continental Mills' claim in full in June of 2002 and demanded reimbursement of $75,441.20 from Atlantic Mutual.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.*, 477 U.S. at 324, 106 S. Ct. at 2553; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson*

v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella* v. *Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## DISCUSSION

Sokol seeks a judgment against Atlantic Mutual for $75,441.20 plus interest, the amount Sokol paid to Continental Mills. Sokol argues that summary judgment should be granted in its favor because Atlantic Mutual was required to defend and indemnify Sokol against Continental Mills' claim. To the contrary, Atlantic Mutual contends that summary judgment should be granted in its favor because it had no duty to defend or indemnify Sokol because Sokol was never sued and, instead, made a "voluntary payment" to Continental Mills.

Under Illinois law,[2] the construction of an insurance policy and its provisions is a question of law. *Outboard Marine Corp.* v. *Liberty Mutual Ins. Corp.*, 154 Ill. 2d 90, 607 N.E.2d 1204, 1212 (1992). A court must construe the policy with concern for the intent of the parties upon contracting. 154 Ill. 2d at 108, 607 N.E.2d at 1212. To establish the meaning of the policy's language and the parties' intent, the court looks to the policy as a whole "with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *Id.* Where the words of a policy are unambiguous, the court gives them their "plain, ordinary, and popular meaning." *Id.* Language that is subject to more than one interpretation is ambiguous and must be interpreted in favor of the insured. *Id.*

---

[2] Neither party addresses what law governs this diversity action, so the court will apply Illinois law. *See, e.g., Wood* v. *Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal courts sits.").

4

Atlantic Mutual argues that it is not obligated to defend or indemnify Sokol for the expenses Sokol incurred in reimbursing Continental Mills because there was no "suit" against Sokol. Sokol argues, however, that Atlantic Mutual was obligated to defend it against Continental Mills' claim and that Atlantic Mutual's claim denial letters amounted to an anticipatory breach of the insurance contract, thereby relieving Sokol of its obligation to settle Continental Mills' claim with Atlantic Mutual's consent.

With regard to Atlantic Mutual's obligations under the insurance policy, the policy provided:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Pl. App. I, P. 14). The policy defined "suit" as "a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged."[3] (Pl. App. I, P. 26).

The Illinois Supreme Court addressed the issue of when a "suit" exists in *Lapham-Hickey Steel Corp.* v. *Protection Mut. Ins. Co.*, 166 Ill. 2d 520, 655 N.E.2d 842 (1995). In *Lapham-Hickey*, the plaintiff-insured sought insurance coverage from the defendant-insurer to recover defense costs associated with the investigation of environmental contamination at one of its facilities under an "all risks" insurance policy. 166 Ill. 2d at 522, 655 N.E.2d at 843. The insurer argued that it was not liable for such costs because no suit had been filed against the insured, while the insured contended

---

[3]The policy further defined "suit" to include arbitration proceedings and other alternative dispute resolution proceedings in which damages are claimed and to which the insured submits with the insurer's consent. No arbitration proceeding or other alternative dispute resolution proceeding is at issue in this case.

that the state environmental agency's consent order had triggered the insurer's duty to defend and indemnify the insured for its defense costs. 166 Ill. 2d at 529, 655 N.E.2d at 846.

With regard to the insurer's duty to defend, the insurance policy stated that the insurer

> ... agrees to defend any suit against the Insured alleging liability for such damage, destruction, or loss and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but this company may without prejudice, make such an investigation, negotiation and settlement of any claim or suit as the Company deems expedient.

166 Ill. 2d at 528, 655 N.E.2d at 845. Since the policy did not define "suit" and the definition of "suit" in the environmental context was a matter of first impression, the Illinois Supreme Court looked to the decisions of federal and state courts that interpreted the meaning of "suit" within the context of a comprehensive general liability policy. 166 Ill. 2d at 530-531, 655 N.E.2d at 846-847. Rejecting the interpretation of some courts that "suit" includes the receipt of a potentially responsible person (PRP) letter from federal and state environmental agencies, the Illinois Supreme Court agreed with analyses of courts finding that "the word 'suit' is unambiguous" and "requires the commencement of some action in a court of law before an insurer's duty to defend is triggered." 166 Ill. 2d at 531, 655 N.E.2d at 847. In accordance with this rule, the Illinois Supreme Court held that neither the initial letter from the Environmental Protection Agency, the draft consent order or the "no-action" letter initiated a suit. 166 Ill. 2d at 533, 655 N.E.2d at 848. Because none of these letters initiated a suit, the insurer's duty to defend was not triggered. 166 Ill. 2d at 532, 655 N.E.2d at 847.

The insurance policy at issue in the instant matter contains duty to defend language that is similar to that in *Lapham-Hickey*. As in *Lapham-Hickey*, the Atlantic Mutual policy reserves the duty to defend to instances in which a "suit" has been brought against Sokol. Importantly, the

insurance policy in this matter clearly defined "suit" as requiring a civil proceeding, arbitration proceeding, or other alternative dispute resolution proceeding. The parties do not dispute that Continental Mills has not undertaken a lawsuit, civil proceeding, arbitration proceeding, or other dispute resolution proceeding against Sokol. Continental Mills did not file an action against Sokol in a court of law. As a consequence, Atlantic Mutual's duty to defend Sokol against Continental Mills' claim was not implicated.

Sokol, however, argues that *Lapham-Hickey* does not assist the court with the resolution of this case because the Illinois Supreme Court did not consider whether an anticipatory breach of the insurer's duty to defend results in the waiver of the requirement that a suit be filed before the duty to defend is triggered. While Sokol is correct in that *Lapham-Hickey* did not address the effect of an anticipatory breach, Sokol has failed to establish that Atlantic Mutual breached its insurance contract with Sokol in anticipation of its obligation to defend Sokol against a potential suit filed by Continental Mills.

In support of its argument that Atlantic Mutual anticipatorily breached its insurance agreement, Sokol points to the claim denial letters from Atlantic Mutual as "a definite statement to Sokol that the Insurer will not perform its contractual duties arising under the policy even if a suit is brought against Sokol for damages covered under the policy." (Pl. Reply Br., P. 11). This contention is unfounded. The claim denial letters reflected Atlantic Mutual's position that Sokol's expenses associated with the peanut butter paste were not covered under the terms of the insurance policy and provided an explanation for this conclusion. Nowhere in the letters did Atlantic Mutual state that it would not defend or indemnify Sokol in the event of a lawsuit. While the June 10, 2002 letter stated that Atlantic Mutual "is unable to indemnify or defend Sokol & Company in this

7

matter," the letter also explicitly informed Sokol that the letter did "not constitute a waiver of rights or obligations under the policy." (Def. Ex. L, P. 29). Like the April 5, 2002 claim denial letter, the June 10, 2002 letter also requested that any suit papers be sent to Atlantic Mutual's office for its review and consideration in the event that a lawsuit was filed. (Def. Ex. L, P. 29). These statements were a recognition by Atlantic Mutual of its continuing rights and obligations under the insurance policy. They did not constitute an anticipatory breach of the insurance contract.

Since Continental Mills has not filed a lawsuit or initiated any other dispute resolution proceeding against Sokol as required by the insurance policy at issue, Atlantic Mutual's contractual obligations to defend and indemnify Sokol have not been triggered. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073 at 1081 (Ill. 1993)("... where there is no duty to defend, there will be no duty to indemnify..."). Consequently, Atlantic Mutual is not obligated to indemnify Sokol for its payment to Continental Mills.

## CONCLUSION

For the reasons stated above, Sokol's motion for summary judgment is denied while Atlantic Mutual's motion for summary judgment is granted. The clerk is directed to enter judgment in favor of the defendant. This case is terminated.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Date: September 14, 2004

8